UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY IVORY,

    Plaintiff,

v.

CONNIE HORTON,

    Defendant.

Case No. 14-cv-10792
Honorable Laurie J. Michelson

**OPINION AND ORDER DENYING**
**AMENDED PETITION FOR WRIT OF HABEAS CORPUS [21]**

On November 18, 2009, at about 2:00 in the afternoon, John Grant was attacked as he was walking from his van to one of his rental properties. The attacker punched and kicked Grant. Eventually, the attacker secured Grant's van keys and took off in Grant's van. Grant believed that Gregory Ivory was his attacker. Ivory was charged and tried. His first trial ended in a mistrial. His second ended in convictions of carjacking, unarmed robbery, and assault with intent to do great bodily harm less than murder. Ivory was sentenced to a minimum of 13 years in state prison. Ivory appealed his convictions without success.

He now seeks a writ of habeas corpus from this Court. As will be explained, the Michigan Court of Appeals adjudicated Ivory's first, second, and thirds claims on the merits and Ivory has not shown that the state appellate court's decision was based on unreasonable fact finding, an unreasonable application of Supreme Court precedent, or that it was contrary to Supreme Court precedent. So 28 U.S.C. § 2254(d) prevents this Court from granting a writ on those three grounds. And Ivory's fourth, fifth, and sixth claims for habeas corpus relief are procedurally defaulted. So the Court will deny Ivory the writ.

## I.

The following is a brief summary of Ivory's two trials.

### A.

Sergeant Joseph Turner testified at Ivory's first trial. Among other things, Turner told the jury that police eventually recovered Grant's stolen van. But, Turner testified, because the van's theft and recovery were separated by many months, the police did not test the van for fingerprints. (ECF No. 26, PageID.1234.)

In response, Ivory's counsel argued that he had never been told that Grant's van had been recovered and indicated that had he been told, he might have ordered fingerprint testing to exculpate Ivory. (ECF No. 26, PageID.1245.) This was allegedly a violation of *Brady v. Maryland*, 373 U.S. 83 (1963). (ECF No. 26, PageID.1246.) Ivory's counsel sought a mistrial and, on the record, Ivory agreed to that relief. (ECF No. 26, PageID.1250.) Although the trial judge found that the prosecution's failure to disclose the van's recovery had been inadvertent (ECF No. 26, PageID.1254–1255), he still found that "it would be inherently unfair to the defense" if he did not declare a mistrial (ECF No. 26, PageID.1256).

### B.

At his second trial, Ivory's defense was that he was not Grant's attacker. In fact, Ivory presented an alibi witness. Jocelyn Smith testified that, on the day of the attack, she saw Ivory go to the computer lab of the community college they were attending at 12:15 p.m. (ECF No. 12, PageID.653–655.) Apparently, there was only one way into and out of the lab and Smith could see that area from where she was studying. (ECF No. 12, PageID.653–654.) She testified that she studied in the same spot until about 2:30 p.m. and never saw Ivory leave the lab. (ECF No. 12, PageID.653–655.) Ivory's testimony was similar: he said he went to the computer lab "to get on

Facebook" and that he was there from about 12:00 to 2:00 p.m. (ECF No. 12, PageID.674.) He then left the lab, went to a bus stop, and arrived home around 3:00 p.m. (ECF No. 12, PageID.674.)

William Fleenor also testified at Ivory's second trial. Fleenor told the jury that the attack happened around 1:00 or 2:00 p.m. and that he was about ten feet away when it happened. (ECF No. 12, PageID.554.) The jury heard how Fleenor was shown a photo array of eight individuals, narrowed it down to two as the possible attacker, and ultimately did not pick Ivory's picture (the other was Ivory's, though). (ECF No. 12, PageID.551–553.) In court, however, Fleenor unequivocally testified that Ivory was Grant's attacker. (ECF No. 12, PageID.548.)

Grant also testified. Grant said that around 2:00 or 3:00 p.m. on the day of the attack he was visiting one his rental properties in Detroit to do repairs. Grant recalled that when walking from his van toward the house, he saw Ivory. (ECF No. 12, PageID.568.) Grant told the jury that Ivory hit him in the face and then kicked him while he was on the ground. (ECF No. 12, PageID.568–569.) At that point, said Grant, Ivory stole his keys, got into his van, and started to drive away. Grant told the jury: "I saw Mr. Ivory in the front seat of the car. He looked straight back at me." (ECF No. 12, PageID.570.) Ivory stopped in the street and yelled for someone to get in the van. Grant saw Ayshia Whitfield, a tenant of one of Grant's properties, get in. (ECF No. 12, PageID.570.) According to Grant, sometime before the attack, Ivory and Whitfield had filed paperwork to rent one of Grant's properties. (ECF No. 12, PageID.573.) Only Whitfield ended up renting from Grant and the two later had a dispute about her deposit. Grant testified that during the attack, his attacker "said something like where is her deposit?" (ECF No. 12, PageID.576.)

Grant also explained that at some point he was shown a photo array of eight people. (ECF No. 12, PageID.579.) Grant told the jury that from among the eight he marked Ivory as his attacker.

(*Id.*) Notably, Ivory's picture is the only one with white margin space surrounding it and his face is among the two smallest. (*See* R. 12, PageID.960–961.)

## II.

The Antiterrorism and Effective Death Penalty Act (AEDPA) (and 28 U.S.C. § 2254 in particular) "confirm[s] that state courts are the principal forum for asserting constitutional challenges to state convictions." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). If a claim was "adjudicated on the merits in State court proceedings," this Court cannot grant habeas corpus relief on the basis of that claim "unless the adjudication of the claim . . . . resulted in a decision" (1) "that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d). But if the state courts did not adjudicate a claim "on the merits," this "'AEDPA deference' does not apply and [this Court] will review the claim *de novo*." *Bies v. Sheldon*, 775 F.3d 386, 395 (6th Cir. 2014).

## III.

In his amended petition for a writ of habeas corpus, Ivory presents six claims.

### A.

Ivory claims that he was denied due process because the trial judge knew the victim and so the trial judge's presence in the case gave the appearance of impropriety. (ECF No. 21, PageID.999; *see also* ECF No. 1, PageID.5; ECF No. 12, PageID.786–787.)

The Michigan Court of Appeals was not persuaded. In part, here is what the appellate court stated:

> Due process requires that all parties have an unbiased and impartial decisionmaker. *Cain v. Dep't. of Corrections*, 451 Mich. 470, 497; 548 NW2d 210 (1996). Under

> the Michigan Court Rules, the disqualification of a judge is warranted if, among other reasons not pertinent here, a "judge is biased or prejudiced for or against a party" or where the judge, under an objective and reasonable view, "has either (i) a serious risk of actual bias impacting the due process rights of a party as enunciated in *Caperton v. Massey*, [556] U.S. [868]; 129 S.Ct. 2252; 173 L.Ed.2d 1208 (2009), or (ii) has failed to adhere to the appearance of impropriety standard set forth in Canon 2 of the Michigan Code of Judicial Conduct." . . .
>
> Absent a showing of actual bias or prejudice, "[d]ue process principles require disqualification . . . 'in situations where experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable[.]'" *In re MKK*, 286 Mich. App 546, 567; 781 NW2d 132 (2009), quoting *Cain*, 451 Mich. at 498; *see also Caperton*, 556 U.S. at 877. . . .
>
> The record reflects that the trial judge knew the victim from approximately seven or eight years ago when their sons participated in a soccer program. The extent of their interaction essentially consisted of a polite remark at a soccer game on one or two occasions. The judge indicated that their limited connection never involved frequent communication, exchanging telephone numbers or telephone calls, having dinner, or going to events together. . . . The trial judge was forthcoming about the prior contact and indicated that there was nothing about it that would affect his impartiality.
>
> Viewed objectively, *Caperton*, 556 U.S. at 883–884, the mere acquaintance between the trial judge and the victim from seven or eight years ago did not give rise to an appearance of impropriety or create a constitutionally intolerable risk of actual bias.

*People v. Ivory*, No. 306185, 2012 WL 6554770, at *1–2 (Mich. Ct. App. Dec. 13, 2012).

This was an "on the merits" adjudication of Ivory's claim that the trial judge was biased or that, by presiding over the case, it created the appearance of impropriety. Accordingly, the Court can only grant relief on this due process claim if the Michigan Court of Appeals based its decision on an "unreasonable determination of the facts" or if the appellate court's decision was "contrary to" or "involved an unreasonable application of" Supreme Court precedent. *See* 28 U.S.C. § 2554(d).

Ivory has not shown that the Michigan Court of Appeals made unreasonable fact determinations. At Ivory's first trial, it was established that the trial judge and Grant both had sons

5

who played soccer together about seven years before the trial. (ECF No. 12, PageID.368–369.) The trial judge stated that Grant was "not somebody I knew well." (ECF No. 12, PageID.368.) And when Grant was asked about speaking with the trial judge at soccer-related events, Grant stated that it was akin to "hi, how are you maybe." (ECF No. 12, PageID.370.) Thus, the Michigan Court of Appeals reasonably found that "the mere acquaintance between the trial judge and the victim from seven or eight years ago did not give rise to an appearance of impropriety." *Ivory*, 2012 WL 6554770, at *2.

As for the law, Ivory has not cited, and this Court is not aware, of any Supreme Court case holding that absent a showing of actual bias or an appearance of impropriety, a trial judge's social interaction with a trial participant violates due process. To the contrary, in *Railey v. Webb*, the Sixth Circuit found that, arguably at least, the Supreme Court had never even held that the appearance of impropriety raised constitutional concerns. *See* 540 F.3d 393, 407 (6th Cir. 2008) ("In sum, one *could* read the Supreme Court precedent in this area as holding that the probability of bias—based on a likelihood or appearance of bias—can be sufficient to disqualify a judge and violate a party's constitutional right to due process. But, one *could also* read these cases as holding that, other than in cases of contempt arising in a closed (secret) hearing, only actual bias or pecuniary-interest-based probability is sufficient—and, moreover, that a matter of mere kinship has, as of yet, never been acknowledged as a sufficiently biasing interest."). And this Court has searched for Supreme Court cases decided after those considered in *Railey* but before the Michigan Court of Appeals decided Ivory's appeal. None hold that the appearance of impropriety violates a criminal defendant's due process rights. And, again, the Michigan Court of Appeals reasonably found that was not even an appearance of impropriety.

Accordingly, Ivory has not cleared § 2254(d).

6

**B.**

Ivory next claims that his second trial violated his rights under the Double Jeopardy Clause of the Constitution. Recall that during his first trial, Ivory sought a mistrial on the basis that he had not been informed that Grant's stolen van had been recovered. And when a criminal defendant seeks a mistrial, the Double Jeopardy Clause is not usually a bar to a second trial. *Oregon v. Kennedy*, 456 U.S. 667, 672–73 (1982). But there is an exception: when the prosecution "intended to provoke the defendant into moving for a mistrial." *Id.* at 679; *see also id.* at 676 ("Only where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion."). Here, Ivory says the prosecution did "goad" him and his counsel into seeking a mistrial. (ECF No. 1, PageID.7; ECF No. 12, PageID.790; ECF No. 21, PageID.1001.) So, argues Ivory, the Constitution should have barred the prosecution from trying him again.

The Michigan Court of Appeals rejected this argument. After setting forth the relevant law, it said:

> We find no evidence that the prosecutor or the police engaged in "intentional prosecutorial conduct" that was "intended to provoke the defendant into moving for a mistrial." The trial court stated that it did not believe there was any deliberate or intentional wrongdoing and that the mistake was inadvertent. The prosecutor, who opposed defendant's motion for a mistrial, stated that she was surprised by the testimony of the officer in charge that the victim's van had been recovered. She indicated that she gave all of her discovery documents to defendant before trial, but she did not know of the development regarding the van until the officer testified. Nothing in the record suggests that the prosecutor had anything to gain from starting over with a new trial. In addition, the officer in charge explained that he was not immediately informed of the recovery of the van and that it was back in the victim's possession before he was notified of its recovery. He also indicated that the van was not preserved for evidence because the recovering officer did not know it was a vehicle that had been the subject of a carjacking. Also, the ignition was damaged, which suggested that someone else handled the van in the interim. The officer

7

opined that there was likely little evidentiary value in testing the van for fingerprints because of the lapse of time and interim handlers.

The objective facts and circumstances of the case do not show any deliberate prosecutorial conduct that was intended to provoke defendant's motion for a mistrial.

*Ivory*, 2012 WL 6554770, at *2–3 (internal citations omitted).

Although the foregoing discussion was under the umbrella of "plain error" review (Ivory had not raised a double-jeopardy claim before the trial court), it was still an "on the merits" determination for purposes of § 2254(d). *See Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017).

And Ivory has not shown that the Michigan Court of Appeals' decision was based on unreasonable fact-finding, an unreasonable application of Supreme Court precedent, or was contrary to Supreme Court precedent. As just noted, in *Oregon v. Kennedy*, the Supreme Court held when the defendant seeks a mistrial, and that request was not provoked by the prosecution, the Double Jeopardy Clause does not bar retrial. 456 U.S. at 672–73. That was the same rule of law the Michigan Court of Appeals recited. And it applied it reasonably. The record does not support a finding that either the police or the prosecutor withheld the fact that the van had been recovered in an attempt to have Ivory attempt to abort the trial. The prosecutor stated, "I was under the impression that the vehicle was not recovered." (ECF No. 26, PageID.1246.) And even though the police knew the vehicle had been recovered, and even if their knowledge could be imputed to the prosecution under *Brady*, nothing suggests that the police withheld the van's recovery for purposes of creating grounds for a mistrial. Sergeant Turner's testimony reflects that one of the reasons he did not dust the van for prints was that "anyone could have been in that vehicle in that six month to eight month period." (ECF No. 26, PageID.1242.) Thus, the Michigan Court of Appeals reasonably found that the "objective facts and circumstances of the case do not show any

deliberate prosecutorial conduct that was intended to provoke defendant's motion for a mistrial." *Ivory*, 2012 WL 6554770, at *3.

As Ivory has not cleared § 2254(d), the Court cannot grant Ivory a writ on the basis of his double-jeopardy claim.

## C.

Ivory's third ground for a writ of habeas corpus is that the photo array used by the police and reviewed by Grant Fleenor suggested he was Grant's attacker.

The Michigan Court of Appeals rejected this claim. It said:

> A pretrial identification procedure violates an accused's due process rights when, considering the totality of the circumstances, "it is so impermissibly suggestive that it gives rise to a substantial likelihood of misidentification." . . . .
>
> The fact that defendant's photograph was somewhat narrower than the others and his head size was slightly different than some of the other subjects' head sizes did not render the lineup unduly suggestive. . . . [T]he record reflects that the victim was able to identify defendant because he observed defendant during the attack and he was previously acquainted with defendant as a potential tenant at one of his rental properties. Giving further credence to the finding that the lineup was not unduly suggestive is the fact that another witness failed to identify defendant when he was shown the same photographs. In addition, any minor differences were further minimized by the officer's use of an overlay over the photographs; this placed the focus on the subjects' faces and "equalize[d]" the size of the photographs. We conclude that the trial court's determination that the photographic lineup was not impermissibly suggestive was not clearly erroneous.

*Ivory*, 2012 WL 6554770, at *3–4 (internal citations omitted).

Although the Michigan Court of Appeals merely found that the trial court did not "clearly err[]" in finding that the photo array was not unduly suggestive, that still amounts to an "on the merits" determination for purposes of § 2254(d). *Cf. Stewart*, 867 F.3d at 638.

And Ivory has not cleared the § 2554(d) bar. The Michigan Court of Appeals identified the correct rule of law. *See Neil v. Biggers*, 409 U.S. 188, 196–97 (1972) ("'[C]onvictions based on eye-witness identification at trial following a pretrial identification by photograph will be set aside

9

on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968))). And this Court cannot say that the Michigan Court of Appeals unreasonably applied that rule. True, Ivory's photo is the only one with white margins (his photo is more "portrait" while the others are more "landscape"). And it is true that the two individuals with ties to Ayshia Whitfield (Grant's tenant) were Ivory and Elzra Johnson and that both of their faces are slightly smaller than the other six. (*See* R. 12, PageID.960–961.) The Court also does not necessarily disagree with Ivory that his complexion is lighter than most if not all of the others pictured. (*See* R. 12, PageID.960.) But with all that said, the bar that Ivory needed to clear was not low: the photographic identification procedure needed to be "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Biggers*, 409 U.S. at 196–97. Having reviewed the photo array, the Court cannot say that it was unreasonable for the Michigan Court of Appeals to "conclude that the trial court's determination that the photographic lineup was not impermissibly suggestive was not clearly erroneous." *Ivory*, 2012 WL 6554770, at *4.

And even assuming the array was impermissibly suggestive, Ivory would still have to show that there was a "very substantial likelihood of irreparable misidentification." *Biggers*, 409 U.S. at 196–97. Yet Grant testified that at the time of the attack, Ivory's face looked familiar and, shortly following the attack, he verified that Ivory and Whitfield had applied to rent from him. (ECF No. 12, PageID.573–575.) Grant thus had a copy of Ivory's driver license, which he turned over to the police. (*Id.*) As for Fleenor, he testified that he was about ten feet away at the time of the attack. (ECF No. 12, PageID.554.) And while he ultimately selected someone other than Ivory from the

10

photo array, Ivory was the other person that Fleenor thought could have been the attacker. (ECF No. 12, PageID.551–553.)

In short, the Court cannot grant relief on Ivory's third claim under § 2254(d); and, even if the Michigan Court of Appeals unreasonably found that the array was not impermissibly suggestive, this Court would find that *Biggers*' reliability factors do not favor a due process violation.

**D.**

The Court need not address the merits of Ivory's fourth, fifth, and sixth claims for habeas corpus relief. After filing his habeas corpus petition raising the three claims just addressed, Ivory sought a stay of this case so he could exhaust more claims in state court. The Court granted Ivory the stay. Ivory then filed a motion for relief from judgment with the state trial court. There, he raised these claims: (1) trial counsel was ineffective for failing to challenge the criminal complaint and for failing to challenge Grant's (or, perhaps, Fleenor's) identification (ECF No. 24, PageID.1069–70), (2) that the complaint or associated affidavit did not establish probable cause and was not signed by someone with personal knowledge of the facts alleged (ECF No. 24, PageID.1071), (3) that the photo array was unduly suggestive (ECF No. 24, PageID.1075), and (4) that he was actually innocent. But aside from the three claims already addressed, in Ivory's amended petition for habeas corpus he raised these three claims: (4) his trial counsel was ineffective for failing to adequately develop his alibi (including subpoenaing or interviewing his federal probation officer, his mother, and Whitfield), (5) trial counsel was ineffective for failing to obtain Ivory's phone records from the day of the attack, video recordings from the community college from the day of the attack, and a urine drop test (apparently administered on the day of the attack) and for failing to investigate a known suspect, and (6) that appellate counsel was ineffective

for, among other things, failing to raise certain claims, failing to communicate with him, and filing an appeal brief with numerous misstatements of fact. (*See* ECF No. 21, PageID.1004, 1009, 1010.)

So, despite this Court's grant of a stay, Ivory did not present the fourth, fifth, or sixth claims in his amended petition to the state trial court in his motion for relief from judgment. And while it appears that Ivory did present some or all of those three claims when he sought leave to appeal the denial of his motion for relief from judgment, to properly exhaust, Ivory needed to present the three claims to the state trial court too. *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("To provide the State with the necessary 'opportunity' [to correct alleged violations of its prisoners' federal rights] the prisoner must 'fairly present' his claim in each appropriate state court[.]"); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, we conclude that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one *complete* round of the State's established appellate review process." (emphasis added)); *Smith v. Gaetz,* 565 F.3d 346, 352 (7th Cir. 2009) (providing that to satisfy the exhaustion requirement, petitioner needed to "raise the claim at each level of state court review: in his initial post-conviction petition before the trial court, in his appeal to the Illinois Appellate Court, and in his Petition for Leave to Appeal (PLA) to the Illinois Supreme Court.").[1]

---

[1] Other judges in this District have held that a habeas petitioner's claims were not properly exhausted when they were not presented in the petitioner's post-conviction motion for relief from judgment and then were raised for the first time in an application for leave to appeal to the Michigan Court of Appeals. *See Harris v. Bauman,* No. 4:14-CV-11604, 2016 WL 4191759, at *9 (E.D. Mich. Aug. 9, 2016); *Adams v. Brewer*, No. 15-CV-11209, 2016 WL 1223350, at *6 (E.D. Mich. Mar. 29, 2016); *Anger v. Klee*, No. 2:14-CV-14159, 2015 WL 6437224, at *4 (E.D. Mich. Oct. 21, 2015); *Hawthorne v. Rivard,* No. 2:12-CV-13243, 2013 WL 6183099, at *12 (E.D. Mich. Nov. 26, 2013); *Halstead v. MaClaren*, No. 2:12-CV-12613, 2013 WL 4669969, at *4 (E.D. Mich. Aug. 30, 2013); *Ceasar v. Warren,* No. 06–CV–15294, 2009 WL 1543327, at *4 (E.D. Mich. June

The question thus becomes what to do about the three unexhausted claims in Ivory's amended petition for habeas corpus. If Ivory could still exhaust the claims, the Court would conduct an analysis of Ivory's mixed petition under *Rhines v. Weber*, 544 U.S. 269 (2005). But Ivory has already filed one motion for relief from judgment. And, with two limited exceptions, "one and only one motion for relief from judgment may be *filed* with regard to a conviction." Mich. Ct. R. 6.502(G)(1) (emphasis added). The exceptions: the second motion for relief from judgment is "based on a retroactive change in law that occurred after the first motion for relief from judgment" or based on "a claim of new evidence that was not discovered before the first such motion." Mich. Ct. R. 6.502(G)(2). Ivory's three unexhausted claims are based on long-standing ineffective assistance of counsel principles—not new law made retroactive. As for new evidence, nothing suggests that Ivory only recently learned the extent of trial counsel's investigation into his alibi defense or the extent of his appellate counsel's advocacy. So, in all likelihood, if Ivory attempted to file another motion for relief from judgment, the filing would be rejected under Michigan Court Rule 6.502(G)(2).

So the three claims are unexhausted and cannot be exhausted; they are thus defaulted. The next question is whether there is a way past that procedural bar. Two exist. One is for Ivory to show "cause" and "prejudice" for failing to exhaust. The other is for Ivory to show that it would be a "fundamental miscarriage of justice" if this Court does not adjudicate his unexhausted claims.

Take the cause-and-prejudice route first. While ineffective assistance of appellate counsel might excuse Ivory's failure to raise certain claims on direct appeal, Ivory did not have counsel

---

2, 2009); *West v. Jones*, No. 06–CV–12057, 2008 WL 1902063, at *11–12 (E.D. Mich. Apr. 29, 2008); *Dorch v. Smith*, No. 01–CV–71206–DT, 2002 WL 32598987, at *19 (E.D. Mich. Sept. 11, 2002); *Kincade v. Stegall,* No. 99–CV–76350–DT; 2001 WL 279751, at *5 (E.D. Mich. Jan. 23, 2001).

13

when he filed his motion for relief from judgment. So his failure to present the claims in his amended petition in that motion is his own. *See Olrich v. Gidley*, No. 16-CV-11603, 2018 WL 1912107, at *5 (E.D. Mich. Apr. 23, 2018).

As for the miscarriage-of-justice route, that too dead-ends for Ivory. To take this path around the procedural bar, Ivory needs to "present new reliable evidence showing that he is actually innocent." *Dufresne v. Palmer*, 876 F.3d 248, 256 (6th Cir. 2017). As part of his application to the Michigan Supreme Court, Ivory attached un-notarized affidavits from himself and his mother, Brenda Cooper, dated March 27, 2015. In his affidavit, Ivory says that on the day of the attack, he met his federal probation officer at 11:45 a.m. and took a urine test. (ECF No. 24, PageID.1154.) After that, he took the bus home and arrived there at about 1:30 p.m. (PageID.1155.) Ivory's mother's affidavit states that Ivory went to meet his probation officer, arrived home "at about 1:30 p.m.," and "[a]fter 15-20 minutes," Ivory left for "Derrick Johnson's" house in Ecorse. (ECF No. 24, PageID.1156.) Arguably this evidence is not even all that exculpatory as it appears that Grant was attacked at about 2:00 p.m.—which would have been after Ivory left his mother's house according to the two affidavits. And even if these two affidavits are meant to show that Ivory was at home or in Ecorse when Grant was attacked, the trial testimony was that Ivory was in the computer lab from about 12:00 to 2:00 p.m. That seems inconsistent with the affidavits. Consider too that these affidavits were produced or secured well after trial. For all these reasons, the affidavits are not the type of "new reliable evidence" that satisfies the miscarriage-of-justice exception.

In sum, Ivory did not properly exhaust his fourth, fifth, and sixth claims; Michigan Court Rule 6.502 prevents Ivory from exhausting them now; the unexhausted claims are thus defaulted; Ivory has not shown cause-or-prejudice to excuse the default; and Ivory has not shown that a

fundamental miscarriage of justice would occur if this Court did not consider the merits of the unexhausted claims. The claims are thus procedurally barred.

## IV.

For the reasons provided, the Court DENIES Ivory's petition for a writ of habeas corpus. The Court does not believe that reasonable jurists would debate the validity of Ivory's first, second, or third claims or this Court's finding that his fourth, fifth, and sixth claims are defaulted. So the Court will not issue a certificate of appealability. But if Ivory still chooses to appeal the Court's decision, he may proceed *in forma pauperis* on appeal. See 28 U.S.C. § 1915(a)(3).

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Date: April 19, 2019

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon counsel of record and/or pro se parties on this date, April 19, 2019, using the Electronic Court Filing system and/or first-class U.S. mail.

s/William Barkholz
Case Manager